### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF INDIANA
### SOUTH BEND DIVISION

| | |
|---|---|
| WILLIAM TURNER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   3:09 CV 381  PPS |
| | ) |
| CITY OF LOGANSPORT, et al., | ) |
| | ) |
| Defendants. | ) |

### OPINION AND ORDER

While William Turner was held at the Cass County jail for driving under the influence, he had several run ins with the officers working in the jail that night, resulting in some serious injuries. Turner sued the City of Logansport and the Cass County Sheriff's Department, as well as Deputy Sergeant Kevin Pruiett, Deputy Mark Van Horn, and Deputy David Wells all in their individual capacities. He claims that excessive force was used against him in violation of his Fourth Amendment. (DE 1, at 5-6.) All Defendants now seek summary judgment. (DE 36.)

Turner concedes that summary judgment is appropriate as to the City of Logansport, the Cass County Sheriff's Department, Deputy Mark Van Horn, and Deputy David Wells. The motion is therefore granted as to those Defendants without further discussion. But for the following reasons the motion will be denied as to Turner's remaining claim against Sergeant Pruiett.

### Background

I'll start with the facts, but will only focus on Turner's remaining claim against Deputy Pruiett. On April 26, 2008 Deputy Pruiett and Deputy Mark Van Horn pulled over Turner when he was driving on the wrong side of the road in Logansport. (DE 39-1, Van Horn Aff. ¶ 2.; DE

39-1, Pruiett Aff. ¶ 3.) Turner, fifty-seven years old at the time, appeared intoxicated and smelled of alcohol, and he admits that he'd been drinking.  (Pruiett Aff. ¶ 3.)  After Turner failed a field sobriety tests, Van Horn and Pruiett handcuffed him and took him to the Cass County Jail. (Pruiett Aff. ¶ 3; Van Horn Aff. ¶ 2.)

Turner was first taken to a breathalyzer room in the jail, where Pruiett was to administer a breath test to measure the alcohol content in Turner's blood.  The security camera footage shows that Pruiett and Van Horn were both in the room along with Turner, and Turner was handcuffed the entire time he was in that room.  (DE 39-9, at 2:22:51.)

Turner initially followed Pruiett's instruction to sit on the bench against the wall of the room, but after sitting for a few seconds, Turner stood up and began speaking to the officers. (*Id.* at 2:24:08.)  Nothing about Turner's actions appears threatening or menacing.  Pruiett appeared to respond to Turner and gestured towards the bench, but Turner continued standing. (*Id.*)  The parties dispute what Pruiett and Turner were saying to each other, but after about ten seconds, Pruiett pushed Turner's chest, and then pushed on his shoulders.  (*Id.* at 2:24:18.) Turner remained standing, and then Pruiett grabbed Turner and applied a knee strike to him.  (*Id.* at 2:24:20.)  Turner, who remained handcuffed, was still standing after being kneed by Pruiett. But then, while Pruiett had two hands on Turner's left arm, Turner fell sideways onto the bench he where he had been sitting, and his upper body and head hit a large office machine sitting at the end of the bench.  (*Id.* at 2:24:27.)

Pruiett next lifted Turner back up, still with both hands on Turner's arm, and Pruiett swung Turner in front of him and around back towards the bench, ending with Turner on his back on the ground, having hit his head and back up against the bench and wall.  (*Id.* at 2:24:30-

2:24:36.)  Then Pruiett helped Turner back up onto the bench.  (Van Horn Aff. ¶ 5.)  Pruiett

administered the breathalyzer test, Turner failed, and he was processed into the jail for driving

while intoxicated.  (Pruiett Aff. ¶ 6.)  Turner sustained additional injuries from altercations

between him and the officers in the processing room and padded cell, but Turner is no longer

pursuing those claims.

### Discussion

Summary judgment is proper "if the movant shows that there is no genuine dispute as to

*any* material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).  On summary judgment, facts and inferences are construed in favor of the non-moving

party.  *Trentadue v. Redmon*, 619 F.3d 648, 652 (7th Cir. 2010).  But if no reasonable jury could

find for the nonmoving party, there is not a genuine issue of material fact.  *Van Antwerp v. City

of Peoria, Ill.*, 627 F.3d 295, 297 (7th Cir. 2010).

Section 1983 exists to protect citizens who have been deprived of a constitutional or

statutory right by persons acting "under color of any statute, ordinance, regulation, custom, or

usage of any State."  42 U.S.C. § 1983.  "To state a claim under Section 1983, a plaintiff must

allege the violation of a right secured by the Constitution and laws of the United States, and must

show that the alleged deprivation was committed by a person acting under color of state law."

*West v. Atkins*, 487 U.S. 42, 48 (1988) (citation omitted).

Turner's excessive force claim against Pruiett arose while he was being processed at the

jail, so I analyze his claim under the Fourth Amendment.  *See Lopez v. City of Chicago*, 464 F.3d

711, 718-19 (7th Cir. 2006) ("the Fourth Amendment governs the period of confinement

between arrest without a warrant and the preliminary hearing . . . .").  The question in a Fourth

3

Amendment excessive force case is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989).  "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Id.* (quoting *United States v. Place*, 462 U.S. 696, 703 (1983)).  The inquiry is objective and fact intensive, requiring courts to consider the totality of the circumstances, including the severity of the crime, whether the suspect posed an immediate threat to the safety of the officers or others, and whether the suspect was actively resisting arrest.  *See Estate of Philips v. City of Milwaukee*, 123 F.3d 586, 592 (7th Cir. 1997).  At the summary judgment stage, after the court determines the relevant set of facts, drawing all inferences in favor of the non-moving party, the ultimate conclusion as to the reasonableness of an officer's actions is a "pure question of law."  *Scott v. Harris*, 550 U.S. 372, 381 n.8 (2007); *see Pinkney v. Thomas*, 583 F. Supp. 2d 970, 982 (N.D. Ind. 2008).

At the outset, I reject Pruiett's argument that Turner's response fell short of the requirements of L.R. 56.1 requiring the response brief to include a "Statement of Genuine Disputes" section that identifies the disputed material facts.  Pruiett requests that I accept his statement of facts as true because Turner's reference to two pieces of evidence isn't enough to satisfy L.R. 56.1.

Turner's response satisfied the local rule.  He included a "Statement of Genuine Issues of Material Fact" section where Turner states that the security video is "sufficient evidence by which the jury could conclude that Deputy Pruiett used excessive force."  (DE 41, at 2.)  Then he

cites portions of the video where Pruiett made physical contact with him as well as specific portions of his deposition where Turner tried to recall what he was saying to Pruiett when he stood up and where he described the physical encounter with Pruiett.  Although Turner's list of evidence is not extensive, his citations to the video and deposition are specific enough to point me to the relevant evidence, and they thereby satisfy Fed. R. Civ. P. 56 and L.R. 56.1.

Setting the procedural issue aside, Pruiett argues that Turner's evidence – the security camera footage and Turner's deposition testimony – don't create an issue of fact as to Pruiett's liability for excessive force.  According to Pruiett, because the video establishes all the relevant facts in his favor, and Turner's admission in his deposition that his memory of the night was sketchy, I should find that he did not use excessive force as a matter of law.  The problem with this argument is that video footage does not established all the relevant facts.  After closely reviewing the video, I can identify at least three unresolved facts questions.

The footage undoubtedly provides the most accurate account of the altercation before me, but because there is no sound and the footage provides a limited view of the incident, it lacks certain key pieces of the puzzle.  (DE 39-9, Pryor Aff. Ex. 3, at 2:22:51–2:26:45.)  The beginning of the footage shows Van Horn and Pruiett bringing Turner into the breathalyzer room.  Turner, handcuffed, sits at the end of a bench against the wall.  (*Id.* at 2:22:51.)  A machine sits at the opposite end of the bench.  At one point, Turner stands up and appears from the video to be talking to the officers.  Pruiett faces him, motioning towards the bench.  (*Id.* at 2:24:08.)  Because the footage doesn't include sound, I don't know what they were saying to each other, or the tone of voice they used.  Ten seconds after Turner rises to his feet, Pruiett pushes him back against the wall with his right hand while Turner is still standing.  Turner does

not sit back down, and Pruiett, holding Turner by the shoulder with his right hand and what appears to be Turner's arm with his left hand, pulls him away from the wall and strikes the side of Turner's body with his knee. (*Id.* at 2:24:20.) At this point, Pruiett's body is blocking Turner's body from view. With Pruiett's hands on Turner's left arm, Turner begins to fall to Pruiett's right towards the machine at the end of the bench. While Pruiett's hands are holding Turner's left arm, Turner falls into the machine. It's not clear whether Turner's legs give out and he falls, or if Pruiett slams him against the machine. (*Id.* at 2:24:27.)

What appears to happen next is Pruiett pulls Turner up by his right arm, and swings Turner 180 degrees back towards the bench. (*Id.* at 2:24:32.) At the end of the swing, Turner falls against the wall and bench and hits his head up against either the wall or the bench. (*Id.* at 2:24:30-2:24:36.) Again, it's unclear whether Turner tripped or Pruiett swung him with enough force to take him off his feet and slam him into the bench and wall. Afterwards, Turner doesn't get up on his own; Pruiett pulls him back up on the bench.

The three unresolved facts are: 1) what were Pruiett and Turner saying to each other; 2) whether Pruiett slammed Turner into the wall and machine, or Turner simply fell; and 3) whether Pruiett swung Turner into the wall, or Turner just lost his footing and fell. These facts bear on whether Pruiett employed excessive force. To be sure, Turner and Pruiett provide different accounts regarding these facts, and to choose one sides' version over the other would require me to make credibility determinations which I cannot make at this point in the proceedings. *Dorsey v. St. Joseph County Jail Officials*, 98 F.3d 1527, 1529-30 (7th Cir. 1996).

As to the conversation between Turner and Pruiett, while Turner remembers asking about the charges against him, Pruiett's position is that Turner was screaming and demanding to see his

girlfriend.  Turner testified that while he was in the breathalyzer room, he stood up to ask about his bond and charges.  (Turner Dep. at 99.)  He stated that he may have also asked about his girlfriend, but he couldn't remember definitively.  (*Id.*)  On the other hand, Pruiett and Van Horn stated that Turner was shouting and demanding to see his girlfriend.  (Pruiett Aff. ¶ 5; Van Horn Aff.  ¶ 4.)

Exactly what Turner said to the officers sheds light on the threat Turner posed, a contributing factor in the excessive force analysis.  *See Estate of Philips*, 123 F.3d at 592.  If Turner was speaking to them only about the charges against him, the objective threat he presented would be less than if Turner was demanding to see his girlfriend.  The same is true of Turner's tone; if he was shouting, as Pruiett characterizes it, he'd be posing more of a threat than if he was speaking in a conversational tone.

The next question the camera footage does not answer is whether Pruiett slammed Turner into the bench or Turner fell.  Turner states that it looks like he slammed him up against the machine.  (Turner Dep. at 101.)  Pruiett and Van Horn state that while Pruiett was using necessary tactics, Turner simply fell to his side and onto the machine.  And he breaks down his physical encounter with Turner in much greater detail than Turner.  According to Pruiett, when Turner stood up, he tried to get Turner to sit back down verbally, and when that did not work, Pruiett pushed him back into a seated position in an attempt to get him back on the bench. (Pruiett Aff. ¶ 5.)  When Turner did not sit down, and, in Pruiett's view, resisted and moved forward, Pruiett used the physical tactic of a knee strike to make him sit.  (Pruiett Aff. ¶ 5.) After that didn't work, Pruiett pushed him against the wall and Turner began sliding to his right, into the machine at the end of the bench.  Pruiett specifically states that he didn't push Turner

7

into the machine; Turner's body stiffened and he simply slid into the machine.  (Pruiett Aff. ¶ 5.)

As mentioned, at this point in the video, Pruiett's body is blocking Turner.  We can't see Turner's legs to know if they buckled.  So it's unclear whether Turner hit the machine because his body stiffened and he fell or Pruiett pulls him over and that's the force that causes him to hit the machine.  Certainly, whether Pruiett slammed Turner into a large piece of office equipment contributes to the reasonableness of his force.  A jury must resolve this factual dispute.

The third factual dispute is the final part of the physical encounter, where Turners ends up on the floor, having hit his head and back against the bench and wall.  According to Turner, Pruiett swung him around and slammed him on the ground.  (Turner Dep. at 103.)  Turner states that he remembers Pruiett having two hands on him, and that he hit the back of his head and back on the wall.  (*Id.*)  In Pruiett's version, Turner's body remained stiff after he had hit the machine.  He states that he tried to pull Turner by the arm, but when he was unsuccessful, he began to spin him around to get him up and back on the bench.  According to Pruiett, once he spun Turner back into the standing position, Turner's legs split, his feet went out, and he ended up on the floor.  (Pruiett Aff. ¶ 5; Van Horn Aff. ¶ 5.)  So Pruiett's testimony– which is directly contrary to Turner's – is that he never threw or pushed Turner down.  (Pruiett Aff. ¶ 5.)

It is true, as Pruiett points out, that Turner's memory is hazy, but when I consider his testimony independent of his credibility, it directly contradicts Pruiett's evidence.  And the camera footage doesn't make it clear whether Turner's unsteadiness caused the fall or Pruiett used enough force to swing him off his feet and into the bench and wall.  As this fact is relevant to whether Pruiett's force was excessive, a jury has to decide what happened.

In sum, to determine whose account of the incident is true, I would have to make a

credibility call, which is inappropriate.  *See Dorsey*, 98 F.3d at 1529.  A jury should have the opportunity to evaluate the security video, Turner's testimony, Pruiett's testimony, and the testimony of the officers supporting Pruiett's position to decide the facts related to Turner's excessive force claim.

The same holds true as to Pruiett's qualified immunity argument.  The Supreme Court has identified two key inquiries for assertions of qualified immunity:  (1) whether the facts, taken in the light most favorable to the plaintiff, show that the defendants violated a constitutional right; and (2) whether that constitutional right was clearly established at the time of the alleged violation.  *Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009); *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  The court may decide these questions in whatever order is best suited to the case at hand.  *Pearson*, 555 U.S. at 233.  The first question is one of law, while the second requires a broader inquiry.

Turner's response did not address the qualified immunity defense to his excessive force claim against Pruiett.  But until a jury makes findings of fact on the disputed issues, I can't determine whether Pruiett violated a constitutional right.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is **GRANTED** as to Defendants City of Logansport, the Cass County Sheriff's Department, Deputy Mark Van Horn, and Deputy David Wells, and **DENIED** as to Turner's claim against Deputy Pruiett arising from the incident in the breathalyzer room.

**SO ORDERED**.

ENTERED: November 2, 2011.

 s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT